UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RANDALL RUENGER,

    Plaintiff,

  v.                                                     Case No. 19-CV-1160

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

Randall Ruenger seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income. For the reasons below, the Commissioner's decision will be affirmed.

## BACKGROUND

Ruenger filed an application for supplemental security income alleging disability beginning on January 1, 2003. (Tr. 13.) Ruenger later amended his alleged onset date to October 30, 2015. (*Id.*) Ruenger's application was denied initially and upon reconsideration. (*Id.*) Ruenger filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on August 8, 2018. (Tr. 32–83.) Ruenger testified at the hearing, as did Jacquelyn E. Wenkman, a vocational expert ("VE"). (*Id.*)

In a written decision issued September 18, 2018, the ALJ found that Ruenger had the severe impairments of anxiety disorder with panic attacks, depressive disorder, cognitive issues including low intellectual quotient, degenerative disc disease, and left upper extremity dysfunction due to shoulder replacement with residual numbness. (Tr. 15.) The ALJ further

found that Ruenger did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 17.) The ALJ found that Ruenger had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except he could never reach overhead with the left upper extremity; frequently handle items with the left hand; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around moving mechanical parts; never operate a motor vehicle in a place of work; and never have exposure to concentrated amounts of dust, odors, fumes, and/or other pulmonary irritants; and could push and pull occasionally. (Tr. 18.) With regard to understanding, remembering, and carrying out instructions, the ALJ found that Ruenger could perform simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work). (*Id.*) With regard to use of judgment in the workplace, the ALJ found Ruenger could make simple work-related decisions. (*Id.*) The ALJ further found that Ruenger could occasionally interact with supervisors, co-workers, and the general public; could tolerate occasional changes in a routine work setting. (*Id.*)

The ALJ found that Ruenger had no past relevant work, was fifty years old on the amended alleged onset date, had at least a high school education, and was able to communicate in English. (*Id.*) The ALJ found that considering Ruenger's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that he could perform. (Tr. 24.) Thus, the ALJ found that Ruenger was not disabled from his alleged onset date until the date of the decision. (Tr. 25.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Ruenger's request for review. (Tr. 1–6.)

# DISCUSSION

## 1.  *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2.  *Application to this Case*

Ruenger argues that the ALJ failed to (1) establish the reliability of the VE's testimony regarding job numbers, and (2) give appropriate weight to certain opinion evidence about Ruenger's mental health limitations. (Docket # 16.) I will address each in turn.

3

### 2.1 Vocational Expert Testimony

Ruenger argues that the ALJ erroneously failed to establish the reliability of the job numbers the VE provided. (*Id.* at 10–23.) Ruenger contends that the VE failed to explain how she derived her numbers at the hearing, and impermissibly relied on a publication that uses the disfavored "equal distribution method." (*Id.* at 12–20.) Ruenger also objects that "[t]he ALJ asked no questions of [the VE], and made no attempt to determine her method of calculation," erroneously accepting the numbers simply as based on the VE's "experience." (*Id.* at 20–23.)

"Before accepting a VE's job number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation." *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018). This is not a formalistic exercise but a pragmatic requirement designed to ensure the reliability of the job numbers; the ALJ is not required to extensively question a VE if there are "sufficient indicia of reliability" as to the VE's testimony to support a conclusion about the applicant's ability to work. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

Here, the ALJ fulfilled his duty to establish the reliability of the VE's job numbers. At the hearing, the VE confirmed that her resume accurately reflected her qualifications to serve as a vocational expert, and counsel for Ruenger indicated that he had no objections to her qualifications to testify as such. (Tr. 67.) In response to the ALJ's first hypothetical, the VE named three jobs such an individual could perform and opined about the approximate number of jobs in the national economy for each job. (Tr. 69.) The ALJ inquired whether this testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"). (Tr. 69–70.) The VE confirmed that it was, but explained that the DOT does not specifically describe certain

4

limitations that were included in the hypothetical, including reaching, use of one extremity, and amount of interaction with others. (Tr. 70.) The VE confirmed that the sources she used do not use the same language as the mental limitations in the RFC, so she relied on her experience to identify aspects of jobs that correspond to those mental limitations. (Tr. 71.)

Counsel for Ruenger questioned the VE at length about her methodology. (Tr. 73–77.) The VE explained that she compiles numbers from the Department of Labor wage and earning statistics, and then compares them to the numbers in the *Occupational Employment Quarterly* ("OEQ"); if they are comparable, she uses them. (Tr. 73–74.) If they are not comparable—which she defines as within a hundred jobs—she does not use them. (Tr. 75.) Counsel for Ruenger expressed some confusion, after which the ALJ asked the VE to "explain to us as best you can in totality your methodology in arriving at the numbers that you've given for these example occupations." (Tr. 77.) The VE answered that she would first look up a job in the OEQ. (*Id.*) Then she would look up all the jobs of that type in the Department of Labor wage and earning statistics, based on her experience observing these jobs and doing forty years of job development and job placement, and compile them into a total number of such jobs. (*Id.*) If that number was within a hundred of the OEQ number, then she used that number. (*Id.*) If it was not close, she did not use it. (Tr. 77–78.) In response to further questioning from counsel for Ruenger, the VE reiterated that she relies on knowledge from her experience about the duties and responsibilities of individual jobs to determine which jobs fit the ALJ's hypothetical. (Tr. 78–79.)

In his decision, the ALJ noted that counsel for Ruenger had objected to the VE's methodology for calculating job numbers and questioned the VE about it at the hearing, but that the VE had provided a concise explanation of the methodology. (Tr. 13.) The ALJ found

5

the VE's testimony consistent with the DOT except that it also addressed limitations on reaching, use of one extremity, and mental limitations in the RFC, based on the VE's experience placing individuals in these jobs. (Tr. 25.) The ALJ thus overruled the objection. (*Id.*)

In light of the lengthy examination of the VE at the oral hearing by both the ALJ and counsel and the VE's explanation of her methods, Ruenger's assertion that the ALJ failed to sufficiently probe the VE's methods is without merit. As for Ruenger's concerns about the VE using the "equal distribution method," the VE clearly explained that she did not mechanically adopt any jobs number, including any based on an "equal distribution method." Rather, she compared numbers from various sources to ensure the reliability of her estimates. Her sources included compilations she generated herself based on her experience in this field. In other words, the VE made estimates based on a combination of statistics and personal experience—precisely the sort of estimates the SSA employs VEs to make and that an ALJ may properly rely on. *Cf. Biestek*, 139 S. Ct. at 1155–56 (explaining that a well-qualified VE's estimates established using a combination of personal experience and reliable methods can constitute substantial evidence).

Because the ALJ properly relied on the VE's numbers, remand is not warranted on this basis.

### 2.2 Weight Given to Medical Opinion Evidence

Ruenger argues that the ALJ erred in weighing the opinions of consultative examiner Dr. Kevin Weber and state agency reviewing psychologist Dr. Ellen Rozenfeld. (Docket # 16 at 23–28.) I find no such error.

6

Case 2:19-cv-01160-NJ   Filed 07/21/20   Page 6 of 14   Document 21

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] Unless the ALJ gives a treating source's medical opinion controlling weight, the ALJ will consider various factors in deciding the weight to give to any medical opinion, including: the examining relationship, with more weight generally given to the medical opinion of an examining source than a non-examining source; treatment relationship, if any; supportability, with more weight given to opinions supported by relevant evidence, particularly medical signs and laboratory findings; consistency, with more weight given to opinions that are consistent with the record as a whole; specialization, with more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty; and any other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c). An ALJ is entitled to give little weight to an examining physician's opinion if he finds that opinion inconsistent with the evidence. *See Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) ("An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." (citations omitted)).

### 2.2.1 Dr. Weber

Dr. Weber performed a mental status evaluation of Ruenger on May 28, 2015. (Tr. 458–65.) Dr. Weber found that Ruenger's intellectual functioning was in the low average or

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules that were in effect at the time of the ALJ's decision. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited July 20, 2020). Ruenger filed his application on February 20, 2015. (Tr. 13.)

average range and that he did not meet the diagnostic criteria for any intelligence-based disorder. (Tr 462.) He did find that Ruenger's symptoms warranted diagnoses of unspecified depressive disorder and unspecified anxiety disorder. (Tr. 463.) He noted "potential concerns that may inhibit his ability to function independently and appropriately," including emotional concerns, somatic concerns, alcohol and other drug abuse history, relatively poor recent work history, legal history, and lack of ability to operate a computer effectively. (*Id.*) He described Ruenger's prognosis as fair and strongly recommended that he enter into a psychotherapeutic relationship with a licensed provider and work with medication providers to ensure appropriate medication management of his emotional concerns. (Tr. 463–64.)

Dr. Weber also provided a statement of Ruenger's work capacity, but noted that it was offered on the sole basis of the examinations and psychological assessments administered at that time. (Tr. 464.) Dr. Weber opined that Ruenger would experience mild limitations in understanding, remembering, and carrying out simple instructions; moderate limitations in responding appropriately to supervisors and co-workers; mild limitations in the ability to maintain concentration, attention, and work pace; marked limitations in withstanding routine work stresses; and moderate to marked limitations in adapting to changes in the work environment. (*Id.*)

The ALJ gave little weight to Dr. Weber's opinion and clearly articulated his reasons for doing so. (Tr. 22.) He pointed out that Dr. Weber saw Ruenger for one consultative examination. (*Id.*) The ALJ explained that Dr. Weber's opinions about Ruenger's limitations in interacting with others, handling work stressors, and adapting to changes were inconsistent with Dr. Weber's findings during the mental status examination. (*Id.*) The ALJ pointed out that Dr. Weber noted a cooperative manner with no outward belligerence or irritability; only

8

subjective reports of becoming easily annoyed or irritable; generally normal speech and logical thought; and adequate functioning. (*Id.*) Although opinions might differ on the extent of inconsistency between Dr. Weber's opinion and his findings, it was not unreasonable for the ALJ to find some degree of inconsistency between Ruenger's largely normal mental status exam and the moderate to marked limitations Dr. Weber suggested. To that point, Ruenger further objects that the ALJ erroneously required corroboration for Dr. Weber's opinions. (Docket # 16 at 26.) But the ALJ did not discount Dr. Weber's opinions as insufficiently supported by corroborating notes; he discounted them as inconsistent with the mental status examination showing adequate functioning.

Ruenger also asserts that the ALJ erroneously rejected Dr. Weber's opinions about Ruenger's mental limitations as based on subjective reports, when subjective reports of symptoms are valid tools in mental status examinations. (*Id.* at 26–27.) But merely including certain subjective complaints in a narrative does not convert those complaints into an objective mental status finding, particularly where the examiner labeled them as the claimant's own reports and did not specifically opine that they would impact his work performance.

Ruenger also argues that the ALJ should have given Dr. Weber's opinion greater weight than Dr. Rozenfeld's because Dr. Weber was an examining source and Dr. Rozenfeld was not. (*Id.* at 25–26.) This is an incorrect statement of the law, which does not have a blanket requirement that an ALJ credit an examining source over a non-examining one. *Givens v. Colvin*, 551 F. App'x 855, 860–61 (7th Cir. 2013) (rejecting argument that ALJ erred in accepting opinion of non-examining physician over that of examining physician). Under the regulations as outlined above, whether the physician has examined the claimant is just one

9

factor the ALJ considers. The ALJ found Dr. Weber's opinion somewhat inconsistent with the mental status examination but found Dr. Rozenfeld's opinion more consistent. Because the ALJ appropriately considered the consistency of the opinions with the examination findings and explained his reasoning for discounting the opinion of the examining source, he did not err. *See Hall*, 489 F. App'x at 958 (explaining that ALJ was entitled to give greater weight to reviewing state agency consultants' opinions than to the consultative examiner's opinion, because the former were more consistent with the objective medical evidence from the exam).

Ultimately, even if the ALJ erred in assigning little weight to Dr. Weber's opinions, Ruenger fails to explain how the error prejudiced him. Ruenger points out that Dr. Weber suggested marked limitations in Ruenger's ability to withstand routine work stresses and moderate to marked limitations in adapting to changes in the work environment (Docket # 16 at 23), but does not explain how the already restrictive mental RFC fails to account for these limitations or how giving greater weight to these opinions would have changed the RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (noting it was unclear what kinds of work restrictions might address the claimant's mental limitations where he hypothesized none and the medical record did not support any); *cf. Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (affirming where claimant suggested no better way to capture her mental limitations in an RFC). Thus, any error in weighing Dr. Weber's opinion was harmless.

Because the ALJ did not err in assigning little weight to Dr. Weber's opinion, remand is not warranted on this basis.

10

### 2.2.2  Dr. Rozenfeld

Dr. Rozenfeld, a state agency reviewing psychologist, assessed Ruenger's mental limitations on September 12, 2015. (Tr. 92–93, 96–98.) Dr. Rozenfeld assessed mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration. (Tr. 92.) Dr. Rozenfeld noted that no problems with concentration, understanding, or responding to questions were noted at the time of application. (*Id.*) She pointed out that Ruenger had undergone a psychological consultative examination in March 2012 and was diagnosed with panic disorder without agoraphobia, describing "some very mild" panic episodes once or twice a day that lasted one minute and were easily controlled. (*Id.*) She noted that he presented in an emotionally stable manner. (*Id.*) She further indicated that Ruenger's primary care provider diagnosed depression and anxiety and prescribed medication, but that Ruenger had never seen a psychiatrist or psychologist. (*Id.*)

Dr. Rozenfeld also summarized Dr. Weber's report of May 2015. (*Id.*) She noted that on mental status examination Ruenger's manner was cooperative with no outward displays of belligerence or irritability though he reported becoming easily annoyed or irritable; he denied suicidal ideation or homicidal ideation and had no history of any such attempt; and there was no indication of a thought disorder. (*Id.*) Dr. Rozenfeld opined that Ruenger's subjective reports of symptoms were disproportionate to the objective medical findings and assessed them as only partially credible. (*Id.*) She found his mental impairment to be severe but imposing no more than moderate limitations. (*Id.*)

11

In assessing Ruenger's functional limitations, Dr. Rozenfeld found Ruenger to be moderately limited in carrying out detailed instructions; moderately limited in maintaining attention and concentration for extended periods; and moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 97.) Dr. Rozenfeld explained that Ruenger's ability to carry out tasks with adequate persistence and pace would be moderately impaired for detailed/complex tasks but adequate for completion of routine, repetitive tasks. She also explained that although ongoing symptoms of depression and anxiety might reduce efficiency and stress tolerance, "these are not to the degree as to prevent ability to engage in work activity within an average schedule and work week the majority of the time." (*Id.*) In the area of social limitations, Dr. Rozenfeld opined that Ruenger was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) She explained that Ruenger would do best in a position that does not include working directly with the general public or require collaborative work with others. (Tr. 98.) As for adaptive limitations, Dr. Rozenfeld opined that Ruenger was moderately limited in responding appropriately to changes in the work setting, explaining that Ruenger would do best in an unskilled position with a consistent schedule and expectations. (*Id.*) In sum, she opined that Ruenger maintained the ability to perform simple, repetitive tasks on a sustained basis in a socially undemanding work setting with routine workplace changes. (*Id.*)

First, Ruenger argues that the ALJ engaged in circular logic by discounting Dr. Weber's opinion but crediting Dr. Rozenfeld's opinion when Dr. Rozenfeld's opinion was

12

based largely on Dr. Weber's report. There is nothing circular about the ALJ's logic; Dr. Rozenfeld did not base her opinion on Dr. Weber's opinion, but on the objective mental status examination findings in his report. The ALJ appropriately found Dr. Rozenfeld's opinion more consistent with those findings than Dr. Weber's opinion.

Ruenger also argues that the RFC and the ALJ's hypothetical question to the VE failed to adequately address Dr. Rozenfeld's findings. (Docket # 16 at 24.) Ruenger proposes that Dr. Rozenfeld's statement that Ruenger's mental limitations would not prevent him from engaging in "work activity within an average schedule and work week the majority of the time" should be understood to require a limitation for being off-task or absent from work due to stress. (*Id.*) However, Ruenger arrives at the need for an off-task or absenteeism limitation only through a tortured reading of Dr. Rozenfeld's opinion. Dr. Rozenfeld manifestly did not opine that Ruenger required any such limitation. In fact, she found Ruenger not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision. (Tr. 97.) As for Ruenger's ability to carry out tasks with adequate persistence, she opined that Ruenger could adequately complete routine, repetitive tasks. (*Id.*) Given that the ALJ limited Ruenger to routine, repetitive tasks, no further limitation was warranted.

In sum, the ALJ did not err in assigning great weight to Dr. Rozenfeld's opinion or failing to include an off-task or absenteeism limitation based on her opinion. Remand based on the ALJ's assessment of Dr. Rozenfeld's opinion is not warranted.

## CONCLUSION

The ALJ adequately established the reliability of the VE's job numbers and appropriately weighed the opinions of the consultative examiner, Dr. Weber, and the state

13

agency reviewing psychologist, Dr. Rozenfeld. Accordingly, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of July, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge